IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER HYDER, | No. No. C 09-03027 SBA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |
| v. | |
| MATHEW CATES, Warden, | |
| Respondent. | |

## INTRODUCTION

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus. Respondent has filed an answer to the petition. Petitioner has filed a traverse. For the reasons discussed below, the petition is DENIED as to all claims.

## BACKGROUND

**I.  Case History**

A Santa Clara County jury convicted Petitioner of attempting to commit a lewd act on a child under the age of 14 and attempting to distribute lewd matter to a minor by Internet or electronic mail. He was sentenced to three years and eight months in prison. (Resp't Ex. 6 (opinion of the court of appeal) at XXX.) The California Court of Appeal affirmed (id. at 1), and the California Supreme Court denied a petition for review. (Resp't Ex. 8.)

///

The instant petition was filed on July 6, 2009. On November 24, 2009, the Court issued an Order to Show Cause why the writ should not be granted. On April 28, 2010, Respondent filed an answer as well as a memorandum of points and authorities, and lodged the record with the Court. On July 20, 2010, Petitioner filed a traverse.

## II.     Statement of Facts

The following facts are taken from the opinion of the California Court of Appeal:

> In November 2004, adult private investigator Chancella Barcellano entered an Internet chat room with the screen name "Lisalisa91." She was portraying herself as a 12-year-old girl when defendant initiated contact with her. Defendant asked what she looked like and she responded that she was five feet two inches tall and weighed 97 pounds. Barcellano also e-mailed defendant a photograph of a young girl.
>
> Over the next two months, Barcellano acting as Lisa had sexually explicit communications with defendant over the Internet and on the telephone. They also discussed everyday matters that a 12-year-old would discuss, such as doing chores and trick-or-treating on Halloween. On three occasions defendant e-mailed her photographs of his genitals. Barcellano saved their online communications by "cutting and pasting" the text into a word processing document.
>
> On January 20, 2005, Barcellano and defendant made arrangements for defendant to fly from his home in Nevada to meet Lisa at her middle school in Concord, California. At 3:00 p.m., defendant called Lisa as planned and told her he was waiting in a white car at a gas station one block from the school. Defendant was arrested as he waited in the car.
>
> When the police searched defendant's rental car they found a note with the address of a nearby motel and airline reservations for a return trip to Nevada the following day. The motel confirmed that defendant had a reservation for that evening. Defendant was taken to the police station for questioning, where he admitted to having sexually explicit conversations with Lisa. He also told the officer "[h]e thought she was about 13."
>
> Defendant testified in his own defense. He admitted being attracted to young girls but denied ever attempting to make physical contact with a young girl. He talked on the Internet to young girls and adult women who role play as young girls to satisfy his attractions. When he agreed to meet Lisa he believed she was an adult role playing as a young girl. He claimed she told him they were role playing and asked him to pretend that he was a pilot. Also, when he saw her screen name, it "sounded familiar because there was a singer back in the eighties called Lisa Lisa." He did some research and discovered that Lisa Lisa's last album was released in 1991, so he thought Lisa would have to be old enough to know who the singer was. Defendant testified that Lisa was readily available to chat online weekdays as well as weekends. He acknowledged that he was "[n]ot absolutely certain" that Lisa was an adult, but explained that he intended to confirm his understanding when he met her.
>
> On cross-examination, defendant acknowledged that Lisa's statement that they were role playing did not appear in the Barcellano transcripts. Defendant claimed that

> this statement was made over the Internet during a 17-minute gap in the transcript that was "missing." The transcript shows that just prior to the gap, Lisa gave defendant her cell phone number and wrote that her fingers were getting "lazy again." In her testimony, Barcellano explained that during the gap they were talking on the telephone and the tape recording of their phone conversation was played for the jury. She denied telling defendant over either the phone or the Internet that they were role playing. Defendant claimed that he could not remember whether he was talking on the phone with Lisa during the missing 17 minutes.

(Resp't Ex. 6 at 2-3.)

## DISCUSSION

### I. Standard of Review for State Court Decisions

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

#### A. Section 2254(d)(1)

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Williams v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent

3

meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

### 1. Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "[Section] 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000).

### 2. "Contrary To"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point). After Andrade,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

Id. In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

### B. Sections 2254(d)(2), 2254(e)(1)

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. See Taylor, 366 F.3d at 999-1000. In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1). Id. First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000. The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings. Id. Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1). Id. According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error. See 28 U.S.C. § 2254(e)(1). "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard

1  of section 2254(d)(2)." Taylor, 366 F.3d at 1000.

2  When there is no reasoned opinion from the highest state court to consider the Petitioner's
3  claim, the Court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06
4  (1991). Here, the California Court of Appeal was the highest state court to issue an explained
5  opinion on Petitioner's claim.

## II. Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987). The parties do not dispute that Petitioner has exhausted his claim. The Court, therefore, considers Petitioner's claim on the merits.

## III. Legal Claim

Petitioner raises one claim in his petition; namely, that the trial court's error in its instruction on the defense of reasonable belief that the victim was not under fourteen years old was a violation of his due process rights. This claim was raised on direct review.

The court of appeal explained that under California law all attempts are specific intent crimes, the specific intent being to commit the crime attempted. (Resp't Ex. 6 at 4-5). This is true even if circumstances unknown to the defendant make completion of the offense impossible, such as in this case, where because "Lisa" was an adult, Petitioner could not with her complete the crime of committing a lewd act on a person under the age of fourteen. (Id. at 5-6.) Petitioner thus could not have been guilty of attempting to commit a lewd act with a person under the age of fourteen if he believed that "Lisa" was in fact more than fourteen years old. The jury instruction given by the trial court required that such a belief be reasonable.[1] The court of appeals held that this was error,

---

[1] The court of appeals explained:
The jury was instructed with a modified version of the standard instruction on mistake of fact (CALCRIM No. 3406) as follows: "The defendant is not guilty of

7

because even an unreasonable belief that the target was more than fourteen would negate the specific intent required for the attempt crime. (Id. at 6.) This holding is binding on this Court. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus).

After holding that the instruction was erroneous, the court of appeal considered whether giving it was harmless:

> Despite the error in requiring that defendant's good faith belief be reasonable, the error was harmless under any standard. (Chapman v. California (1967) 386 U.S. 18, 24; People v. Watson (1956) 46 Cal. 2d 818, 836.) [Footnote omitted] As the case was argued to the jury, the focus was entirely upon whether defendant in fact believed that Lisa was an adult, and not upon whether such a belief was reasonable. At no point in the closing argument did the prosecutor emphasize to the jury that defendant's belief had to be reasonable, or argue that if he did believe Lisa was an adult, such a belief was unreasonable. Rather, he argued that "it's the defendant's intent that controls," that there was no mistake of fact, and that defendant "believed he was sending [harmful materials] to a minor." "[R]egardless of what he may have testified to on the stand about Lisa, ... [e]very bit of information you have ... will demonstrate that the defendant believed [Lisa was a] minor [ ]." Likewise, defendant's attorney argued, without objection, "The judge told you and it is the case that even though there's no victim in this case, Mr. Hyder is guilty of an attempt if he thought there was a victim, if he believed Ms. Barcellano to be a minor. But he must have intent to be guilty. You have to believe that he thought Ms. Barcellano was a minor. He would have to have the intent to send lewd messages to a minor, and in that case, the [d]istrict [a]ttorney is charged with proving that he thought she was a minor and-and an attempt to molest a minor.... If Roger Hyder thought Ms. Barcellano knew-because she was an adult-if he thought she was an adult, Roger Hyder is not guilty." As framed by these arguments, the jury was asked to decide whether or not defendant believed Lisa was an adult, and by its verdict must have found that defendant did not have such a genuine belief. The reasonableness of

---

count one or counts two, three, and four if he did not have the intent or mental state required to commit the crime because he reasonably did not know a fact or reasonably and mistakenly believed a fact. [¶] If the defendant's conduct would have been lawful under the facts as he reasonably believed them to be, he did not commit count one or counts two, three, and four. [¶] If you find that the defendant believed that that [ sic ] 'Lisa' was in fact an adult and not under age 14 and if you find that belief was reasonable, he did not have the specific intent or mental state required for count one or counts two, three, and four. [¶] If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for count one or counts two, three, and four, you must find him not guilty of those crimes." The bench notes that accompany CALCRIM No. 3406 explain, "If the defendant is charged with a general intent crime, the trial court must instruct with the bracketed language requiring that defendant's belief be both actual and reasonable. [¶] If the intent at issue is specific criminal intent, do not use the bracketed language requiring the belief to be reasonable."

(Resp't Ex. 6 at 4.)

> defendant's belief was never an issue, which undoubtedly accounts for the failure to have requested an instruction concerning a genuine but unreasonable belief.
>
> The evidence that defendant did not in fact believe Lisa was an adult was overwhelming, leaving little room to speculate that the verdict would have been different if the jury had been instructed that a genuine but unreasonable belief that Lisa was not a minor was also a defense. Although defendant testified in some detail regarding the basis for his belief that Lisa was an adult, there was absolutely no corroborating evidence. Indeed, the evidence was that when originally asked how old he thought Lisa was, he answered "about 13." He had arranged to meet Lisa in front of what he thought was her middle school. Moreover, defendant's credibility was severely undermined by the prosecution's evidence. His testimony about Lisa's "missing" acknowledgment that they were role playing was contradicted by Barcellano and refuted by the transcript of the Internet messages and the recording of the telephone conversation. His suggestion that Lisa was available to chat during school hours was not supported by the record. The record reflects that most of the Internet chats took place during the late afternoon and early evening. While there may have been others, defendant did not identify any specific chat that occurred during school hours. In short, there is absolutely no basis to believe that a rational jury could have found that defendant believed Lisa was an adult, even if an unreasonable belief would have sufficed. The instructional error therefore provides no basis for reversal of the judgment. (People v. Johnson (1993) 6 Cal. 4th 1, 45-47.)

(Resp't Ex. 6 at 8-10.)

Here the court of appeal correctly applied the Chapman test for harmless error, which remains applicable on direct review in state courts, to the federal claim. See Chapman v. California, 386 U.S. 18, 24 (1967) ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). But this court must assess the prejudicial impact of a constitutional error in a state-court criminal trial under the standard recognized in Brecht v. Abrahamson, 507 U.S. 619 (1993), which is that a habeas petitioner is not entitled to relief unless the trial error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). A federal habeas court must apply the Brecht standard, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the Chapman standard. Fry v. Pliler, 551 U.S. 112, 121-22 (2007); Bains v. Cambra, 204 F.3d 964, 977 (9th Cir. 2000). As the Supreme Court stated in Fry, it would make "no sense to require formal application of both tests (AEDPA/Chapman and Brecht) when the latter obviously subsumes the former." Fry, 551 U.S. at 120 (emphasis in original); see also Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010) (holding that Fry means that federal habeas court "need not" conduct an AEDPA/Chapman analysis in

9

addition to applying Brecht).

///

Here, as the court of appeal noted, the defense was presented and argued to the jury entirely in terms of Petitioner's belief that "Lisa" was not under fourteen, without any discussion whether that belief was reasonable or unreasonable. Furthermore, the evidence was overwhelming that he thought she was under fourteen – not least that Petitioner at first said that he thought she was "about thirteen," and that he arranged to meet her near what he thought was her middle school. The Court therefore concludes that the instructional error did not have a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## **CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Furthermore, no certificate of appealability is warranted in this case. See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). Petitioner has failed to make a substantial showing that a reasonable jurist would find this Court's denial of his claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 6/20/12

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

10

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ROGER HYDER,

        Plaintiff,

  v.

MATHEW CATES et al,

        Defendant.

Case Number: CV09-03027 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 24, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Roger Hyder
P.O. Box 571082
Las Vegas, NV 89157-1082

Dated: July 24, 2012

        Richard W. Wieking, Clerk
        By: Lisa Clark, Deputy Clerk

G:\PRO-SE\SBA\HC.09\Hyder3027.deny-gaw2.wpd